# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH INTURRI, ET AL | : | CIVIL ACTION NO. |
| Plaintiffs | : | 3:03 CV 987 (CRD) |
| v. | : | |
| | : | |
| CITY OF HARTFORD, ET AL | : | MAY 21, 2004 |
| Defendants | : | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### FACTS

The facts are as presented on the accompanying Local Rule 56(a)(1) Statement of Material Facts Not in Dispute.

### ARGUMENT

**I.   The summary judgment standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court reiterated:

> Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

Id. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1872).

The Second Circuit has stated that a "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Yerdon v. Henry, 91 F.3d 370, 374 (2d Cir. 1996), quoting, Anderson v. Liberty Lobby, Inc., supra, at 252. Further, the Second Circuit has stated that a party opposing summary judgment "cannot rely on inadmissible hearsay in opposing a motion for summary judgment." Burlington Coat Factory Warehouse Corp. v. Esprit de Corp., 769 F.2d 919, 924 (2d Cir. 1985).

Although defendant bears the burden of showing that no genuine factual dispute exists, the plaintiff must make a sufficient showing on the essential elements of his case for which he bears the burden of proof at trial. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Therefore, when "a defendant moving for summary judgment has pointed to the absence of evidence to support an essential element on which the plaintiff has the burden of proof, the plaintiff, in order to avoid summary judgment, must show the presence of a genuine issue by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in his favor, to establish the existence of that element at trial." Grain Traders, Inc. v. Citibank, N.A., 160 F.3d 97, 100 (2d Cir. 1998) (citations omitted).

**II.     The Plaintiffs' First Amendment Claims violation**

Plaintiffs assert a violation of their right to freedom of expression and protest. The expression claimed by plaintiffs is the sporting of tattoos of a spider web design.

At the outset, it is important to appropriately frame the issue by reference to the constitutional interests at stake when a public employer seeks to regulate expression

by one of its employees a part of performing his official duties.  With respect to "job performance speech, "; i.e. speech which is part of employees' official duties, the public employer's interest in regulation is at its height.  <u>Yniquez v. Arizonians for Official English</u>, 69 F.3d 921, 939-40 (9th Cir 1995).  See, <u>Rosenberger v. University of Virginia</u>,  -- U.S --, 132 L. Ed. 2d 700, 718 115 Ct. 2510, 2518 (1995) ("[W]e have permitted the government to regulate the content of what is or is not expressed when it is the speaker…").

Government's authority to regulate speech as an employer is far broader than its power as sovereign.  <u>Waters v. Churchill,</u> 511 U.S. 661,128 L. Ed. 2d 686, 697, 114 S.Ct. 1878 (1994).

> The key to First Amendment analysis of government employer decisions, then, is this: The government's interest in achieving its goals as effectively and as efficiently as possible is elevated from a relatively subordinate interest to a significant one when it acts as employer.
>
> When someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her.
>
> Id, at 699.

Accordingly, "many of the most fundamental maxims of our First Amendment jurisprudence cannot reasonably be applied to speech by government employees." Waters, 128L. Ed. 2d at 697. Public employers need not tolerate on the job speech which promotes dissension, nor are the usual overbreadth principles operative. As the Waters Court pointed out,

> speech restrictions must generally precisely define the speech they target. Yet a public employer may, consistently with the First Amendment, prohibit its employees from being "rude to customers," a standard almost certainly too vague when applied to the public at large.

128 L. Ed. 2d at 698.

Thus, government has the authority "to determine the tasks that it asks its employees to perform and to dictate the content of the messages it wishes its employees to communicate to the public." Yniquez v. Arizonians for Official English, 69 F.3d 921, 940 (9th Cir.1995).

Under Connick v. Myers, 461 U.S. 138 (1983) and Pickering v. Board of Education, 205 U.S. 563 (1968), plaintiffs are required to show: (1) their expression was on a matter of "public concern"; (2) this expression was a "substantial" or "motivational" factor in the defendant's adverse decision or conduct; and (3) the

interests of the plaintiffs in commenting on the matter of public concern outweigh the state's interest in maintaining an efficient workplace. <u>Sanchez v. City of Santa Ana</u>, 936 F.2d 1027, 1038 (9th Cir. 1990).

In <u>Waters,</u> supra, the Court gave further guidance as to how constitutional scrutiny is to be applied to public employers' decisions. There the Court reversed a court of appeals decision which held that First Amendment scrutiny must be applied to what a jury determined the actual speech was, rather than what the employer thought it was. 128 L. Ed. 2d at 694. Instead, the proper inquiry is to "look to the facts as the employer reasonably found them to be." Id. at 701. As with the other tasks under the <u>Connick-Pickering</u>, tests, <u>Waters</u>'s inquiry into the reasonableness of the employer's assessment is question for the court. 128 L. Ed. 2d at 695.

<u>Waters</u> also requires review under a reasonableness standard of the employer's assessment of the harm which may flow from employee expression:

> [W]e have consistently given greater deference to government predictions of harm used to justify restriction of employee speech than to predictions of harm used to justify restrictions on the speech of the public at large. Few of the examples we have discussed involve tangible, present interference with the agency's operation. The danger in them is mostly speculative. .. But we have given

> substantial weight to government employer's reasonable predictions of disruption, even when the speech involved is on a matter of public concern, and even though when the government is acting as sovereign our review of legislative predictions of harm is considerable less deferential.

128 L. Ed. 2d at 698 (citations omitted)  Accordingly, the employer's reasonable belief that expression will have an actual disruptive effect is sufficient.  <u>Voigt v. Savell</u>, supra, 70 F.3d at 1561;  <u>Aldrich v. Knab</u>, 858 F.Supp. 1480, 1496 (W.D. WA. 1994).  Public employers are not required "to allow events to unfold to the extent that the disruption…. is manifest."  <u>Connick v. Myers</u> at 152.  Where the employer's action involves issues critical to public safety, courts are especially deferential to the judgments.  <u>Allen v. Scribner</u>, 812 F.2d 426, 432 (9th Cir. 1987).

Thus, <u>Waters</u> holds that the employers are entitled to judgment as a matter of law, unless the employee can show that the employer was motivated by something other than a reasonable belief that the employee's speech would be disruptive.  128 L Ed. 2d at 703-04.  Specific application of reasonableness analysis under <u>Waters</u> requires the Court to determine if the employers' conclusions are within the range which an "experienced professional can draw from the circumstances."  Employers are entitled to rely on their personal knowledge of the reputation and credibility of the

persons involved, to rely on hearsay, and "on other factors which the judicial process ignores." 128 L. Ed. 2d at 700. "Only procedures outside the range of what a reasonable manager would use may be condemned as unreasonable." 128 L. ed. 2d at 701. The <u>Waters</u> Court made it clear that, in imposing a reasonableness requirement on employer decision-making, it did not intend to turn each case into a battle of experts, or to make hospital operations the task of courts. To the contrary, <u>Waters</u> expressly foreclosed the type of challenge which plaintiffs mount here, stating:

> [A]n employee may be able to challenge the substantive accuracy of the employer's factual conclusions under state contract law, or under some state statute or common-law cause of action…. But this protection is not mandated by the Constitution.

128 L. Ed. 2d at 700-702.

Under <u>Waters</u>, the determination whether the employee's speech was on a matter of public concern must be made with references to the speech as the employer reasonable found it to be. 128 L. Ed. 2d at 682, 703. This includes "what the speech was, in what tone it was delivered, what the listener's reactions were……" 128 L. Ed. 2d at 695. Accordingly, after-the-fact efforts to import political content into plaintiffs' conduct by suggesting that it is symbolic of the are unavailing:

> So long as [the employer]… discharged [plaintiff]… only for the part of the speech that was either not on a matter of public concern or on a matter of public concern but disruptive, it is irrelevant whether the rest of the speech was, unbeknownst to them, both on a matter of public concern and nondisruptive.

128 L. Ed.2d at 703

Plaintiffs have never claimed any political agenda in displaying their tattoos. Thus, it was reasonable for the defendants to conclude that the plaintiffs' expression pertained to personal concerns, and was not designed to further discussion on issues of public concern. Whatever other motive plaintiffs may have had, or now have, is irrelevant to the content of his speech as it reasonably appeared to their employer at the time. See, Havekost v. U.S. Dept of Navy, 925 F.2d 316, 318 (9th Cir. 1991) ("content" is the greatest single factor in determining public concern). That an unexpressed motive will not suffice to elevate conduct to the level of constitutionally protected speech is shown by United States v. O'Brien, 391 U.S. 367, 376 (1969), where the Court said with respect to draft-card burning: "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea".

Plaintiffs simply have no right to engage in self expression while performing their police duties. As in Waters, the "potential disruptiveness of sporting a tattoo which has been associated with racist supremacist groups is enough to outweigh whatever First Amendment value it might have had." 128 L. Ed. 2d at 702-03. The risk of provoking fear and anxiety in citizens amply justifies defendants' decision to restrict plaintiffs' on the job expression.

There appears to be only case which has addressed almost the identical issue as the one presented here. In Briggs v. City of Fort Worth, 229 F. Supp. 2d 572 (N.D. Texas 2002) the court, in rejecting a constitutional challenge by a police officer to the police chief's order to cover his tattoos, stated:

> As with any analysis regarding the First Amendment, the threshold issue is whether tattoos are a form of expression or speech that is protected by the First Amendment. Although few Courts have considered the issue, those that have appear to agree that a tattoo is not protected speech under the First Amendment. *See Stephenson v. Davenport Comm. Sch. Dist.,* 110 F.3d 1303 (8th Cir.1997) (stating that "the tattoo is nothing more than 'self- expression,' unlike other forms of expression or conduct which receive first amendment protections"); *People v. O'Sullivan,* 96 Misc.2d 52, 409 N.Y.S.2d 332 (N.Y.App.Div.1978) (stating that tattooing is not speech or even symbolic

speech). Because tattoos are not protected expressions under the fundamental First Amendment right of free speech, strict scrutiny, though invoked by Riggs, is inappropriate. Instead, his claimed classification must merely be rationally related to a legitimate state interest. *See Cleburne,* 473 U.S. at 440, 105 S.Ct. 3249; *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). In other words, for his order to pass a constitutional challenge, Mendoza must merely have some minimal justification for treating Plaintiff differently from other police officers with tattoos. *Id.*

Under the reasoning of the Briggs case, the plaintiffs' First Amendment claims fail.

### III.   The plaintiffs' Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny any person within its jurisdiction the equal protection of the laws". U.S. Const. Amend. XIV. It "is essentially a direction that all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L.Ed. 2d 313 (1985). Before determining the validity of any classification scheme under the Equal Protection Clause, the Court must first decide the proper standard of review.

Generally, "legislation is presumed to be valid and will be sustained if the classification drawn ... is rationally related to a legitimate state interest." Cleburne, 473 U.S. at 440.; Stefanoff v. Hays County, Tex., 154 F.3d 523, 525 (5th Cir. 1998) (to establish a violation of the constitutional right to equal protection, plaintiff must prove that defendant created two or more classifications of similarly situated people that were treated differently and that the classification had no rational relation to any legitimate governmental objective).  If the classification is based on the "suspect" classifications of race, alienage, or national original or if a fundamental right is involved, the classification will be subjected to strict scrutiny and will only be upheld if the law is tailored to serve a compelling state interest.  Cleburne, 473 U.S. at 440.

To make out an equal-protection claim, a plaintiff must show three things: (1) that he is a member of a protected class, (2) that he is otherwise similarly situated to members of the unprotected class, and (3) that he was treated differently from members of the unprotected class.  McNabola v Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993); Cleburne, 473 U.S. at 440-41.  To prevail, the plaintiff then must demonstrate that the defendant acted with a discriminatory purpose.  Lavernia v.

Lynaugh, 845 F.2d 493, 496 (5th Cir. 1988). That is, the plaintiff must prove that the defendant "singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group."Lavernia, 845 F. 2d at 496.

In the present case plaintiffs allege discrimination based on exercise of the fundamental right of free expression, and seek to invoke the Court's strict scrutiny. Plaintiffs must prove their protected expressions; show how they are otherwise similarly situated to those who have made protected expressions; and demonstrate how they were treated differently. Riggs v. City of Fort Worth, 229 F. Supp. 2d 572 (N.D. Texas 2002). Then, plaintiffs must show that the defendants intentionally treated them differently because of their protected expressions. Id. See also Gutzwiller v. Fenik, 860 F.2d 1317, 1325 (6th Cir. 1988) (in order to recover on a disparate treatment claim based on sex under Title VII, which mirrors the proof required in order to recover on an equal protection claim under Section 1983, the plaintiff must prove intentional discrimination by showing that the "adverse employment decision would not have been made 'but for' her sex").

With respect to their tattoos, plaintiff appear to be arguing that their rights under the Equal Protection Clause are being violated because they are being treated differently from similarly situated persons with tattoos by being forced to cover their tattoos. Plaintiffs claim that this anti-tattoo discrimination is a violation of their fundamental right to freedom of expression under the First Amendment.

But clearly Plaintiffs' tattoos are a personal expression and are not speech addressing a "legitimate public concern".  See discussion, supra.. Consequently, as long as the police chief has a rational basis for treating plaintiffs differently, then his policy should be upheld.

Defendant Marquis, in issuing the memorandum requiring spider web tattoos to be covered up indicated that were found to be offensive.  This conclusion is rationally supported by the association of the tattoos with racist extremist groups.  Additionally, while other officer sport different tattoos, no issue with respect to those was brought to the attention of the police department command staff.  In <u>Kelley v. Johnson,</u> 425 U.S. 238, 247, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), the Supreme Court held that a law enforcement agency's "[c]hoice of organization, dress, and equipment for law

enforcement personnel is a decision entitled to the same sort of presumption of legislative validity as are state choices designed to promote other aims within the cognizance of the State's police power."  Courts have long held that "the city through its police chief has the right to promote a disciplined, identifiable, and impartial police force by maintaining its police uniform as a symbol of neutral government authority, free from expressions of personal bent or bias." <u>Daniels v. Arlington,</u> 246 F.3d 500, 503 (5th Cir. 2001).  Defendant Marquis had legitimate, nondiscriminatory reasons for requiring the plaintiffs to cover their spider web design tattoos.  Plaintiffs cannot show that Marquis's reasons are "wholly arbitrary," which means "having no rational basis." <u>Karr v. Schmidt</u>, 460 F.2d 609, 616-18 ( 5th Cir. 1972).

### IV    <u>Defendant Marquis is entitled to qualified immunity</u>

Public officials performing discretionary functions enjoy immunity from suits for damages, provided their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

Recent Supreme Court rulings make clear that " [a] court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all.... In the event that this threshold determination reveals a possible constitutional violation, [a] qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." <u>Wilson v. Layne</u>, 526 U.S. 603, 609, 119 S. Ct. 1692, 143 L. Ed.2d 818 (1999); <u>Wilkinson v. Russell</u>, 182 F.3d 89, 102-03 (2d Cir. 1999) (citations and internal quotation marks omitted). The issues of whether a plaintiff has asserted a

violation of a constitutional right at all, whether that right was clearly established at the time of the defendant's challenged actions, and whether the facts as alleged demonstrate that the defendant's actions were objectively reasonable are pure matters of law.  Martinez v. Simonetti, 202 F.3d 625, 632 (2d Cir. 2000).  Parsons v. Pond **,**126 F.Supp.2d 205 (D.Conn.2000).

As discussed above, plaintiffs cannot show a deprivation of an actual constitutional right at all.  Therefore, defendant Marquis is entitled to qualified immunity.  Even if, assuming arguendo, plaintiffs had demonstrated a deprivation of a constitutional right, defendant Marquis would still be entitled to qualified immunity.

Under the second step of the Wilson qualified immunity analysis, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." Wilson, 526 U.S. at 615.  The Second Circuit uses "three factors to determine whether a given right is 'clearly established.'  First, whether it is 'defined with reasonable specificity;' second, whether 'the decisional law of the Supreme Court or the appropriate circuit court has clearly established the right;' third, 'whether in light of preexisting law the unlawfulness of the defendant official's actions is apparent.' "Charles W. v. Maul, 214 F.3d 350, 360 (2d Cir. 2000).

Given that the cases which considerd the question have ruled that tattoos are not protected speech under the First Amendment, defendant Marquis did not violate clearly established law.

As to the third prong of the Wilson analysis of whether a defendant is entitled to qualified immunity, "[t]he objective reasonableness test is met--and the defendant is entitled to immunity--if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." Rohman v. N.Y. City Transit Auth., 215 F.3d 208, 216 (2d Cir. 1999). (citations and internal quotation marks omitted).  Given the existing case law regarding tattoos, defendant Marquis's actions were objectively reasonable.  He is, thus, entitled to qualified immunity.

### V.    **Plaintiffs' official capacity claims against defendant Marquis must fail**

Plaintiff's Section 1983 claim against Bruce Marquis in his official capacity must fail because public officials acting in their official capacities are not "persons" under Section 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989); see also Richardson v. Metro. Dist. Comm'n, Action No. 3:00 CV 1062 (JCH), 2003 U.S. Dist. LEXIS 12757, at *1 (D. Conn. July 23, 2003) (recognizing that "an official-

capacity suit against a state officer is not a suit against the official but rather is a suit against the State itself).

## **CONCLUSION**

For the foregoing reasons, defendants are entitled to judgment as a matter of law.

                DEFENDANTS

                BY_____
                      Helen Apostolidis
                      Assistant Corporation Counsel
                      Their Attorney
                      550 Main Street
                      Hartford, CT 06103
                      Federal Bar No. Ct 05534
                      Telephone (860) 543-8575
                      Facsimile (860) 722-8114

## **CERTIFICATION**

  This is to certify that a copy of the foregoing was mailed, postage prepaid, this 21th day of May 2004 to:

Jon L. Schoenhorn, Esq.
97 Oak Street
Hartford, CT 06106

                 _____
                 Helen Apostolidis