UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
JOSEPH INTURRI, ET AL
                                    :     CIVIL ACTION NO.
        Plaintiffs          :     3:03 CV 987 (CFD)
v.                                        :
                                    :
CITY OF HARTFORD, ET AL    :     MAY 21, 2004
        Defendants      :
_____:

## STIPULATION OF FACTS

The Plaintiffs and Defendants, by and through their respective attorneys, hereby stipulate to the following facts for purposes of summary judgment:

1. Plaintiff Joseph Inturri is a United States citizen and has been a sworn police officer for the City of Hartford since 1983.

2. For a number of years Joseph Inturri has sported visible tattoos on his arms.

3. Plaintiff Stephen Miele is a United States citizen and has been a sworn police officer for the City of Hartford since 1987.

4. For a number of years Stephen Miele has sported visible tattoos on his arms.

5. Plaintiff Matthew Rooney has been a sworn police officer for the City of Hartford since 1988.

6. For a number of years Matthew Rooney has sported visible tattoos on his arms.

7. Plaintiff Darren Besse has been a sworn police officer for the City of Hartford since 1990.

8. Since approximately March 2003 Darren Besse has sported visible tattoos on his arms.

9. Plaintiff Mark Castagna has been a sworn police officer for the City of Hartford since 1987.

10. Since approximately March 2003 Mark Castagna has sported visible tattoos on his arms.

11. Defendant City of Hartford is a municipal corporation organized pursuant to the laws of the State of Connecticut.

12. Defendant Bruce P. Marquis was the Chief of Police for the City of Hartford from December 2000 to January 2004.

13. Since at least 1985 Hartford Police Department General Order 6-15 provided standards and requirements for sworn personnel uniforms and appearance. (Exhibits A, B, C, D).

14. In 1997 General Order 6-15 was revised to address, inter alia, tattoos, providing in Section III C. 5, Tattoos that are visible to the public and deemed offensive, immoral, or presenting an unprofessional appearance, as deemed by a supervisor, shall require the officer to cover said tattoo with a bandaging type material or a long sleeve shirt in accordance with the Uniform of the Day Standards . (Exhibit B).

15. In 1999 General Order 6-15 was revised again. Section III C. 5 was amended to read Tattoos that are visible to the public and deemed offensive, immoral, or presenting an unprofessional appearance, as deemed by the Chief of Police, shall require the officer to cover said tattoo with a bandaging type material or a long sleeve shirt in accordance with the Uniform of the Day Standards . (Exhibit C).

16. On or about October 17, 2002 Detective Keith Knight of the Hartford Police Department wrote a letter to Michael Wood, the President of the Hartford Police Union, raising several concerns, and provided copies of such letter to City of Hartford officials, including the police chief, the mayor, deputy mayor, city manager and council members. (Exhibit E).

17. The four-page October 17, 2002 letter from Keith Knight to Michael Wood devotes the following lines to the issue of tattoos worn by Hartford police officers:  Lets debate the issue of a white police supervisor along with two other white police officers wearing a

racist tattoo of a white supremacy group called the Arian Nation. The tattoo which is a spider web tattoo, which I am informed by the Department of Corrections who monitors such groups that the tattoo symbolizes race hatred of non-whites and Jews. I know the U.S. Constitution gives everybody the right to free speech and expression, but this is unacceptable for a police officer to wear in plain view knowing that it offends and what it stands for. Where is the enthusiastic debate on this issue?

18. Following receipt of the October 17, 2002 letter City Manager Lee Erdmann informed Bruce P. Marquis that the issue of the spider web tattoos was a concern of the mayor's and at least some council people and asked him to bring it to resolution.

19. Bruce P. Marquis consulted with the Office of the Corporation Counsel and also sought the opinion of a contact at the Federal Bureau of Investigation in addressing the issue of the spider web tattoos. (Exhibit F).

20. The command staff of the Hartford Police Department discussed the matter, sought the advice of their attorney, and decided that, pursuant to Hartford Police Department General Order 6-15, the spider web tattoos should be covered while the officers who sported them were on duty or in uniform.

21. In reaching this decision the command staff of the Hartford Police Department considered the following:

- The Anti-Defamation League web site references to spider web design tattoos. (Exhibit G)

- The population of the City of Hartford is predominantly, almost seventy percent, minority.

- Throughout the years, race relations in the City of Hartford and between the city's population and the Hartford Police Department have occasionally been troubled, with

certain events, such as the shooting of an African-American youth by a white police officer, acting as triggers.

- The Hartford Police Department employs minority police officers and civilian employees.

- The Hartford Police Department is subject to a consent decree in the case of Cintron v. Vaughan.

- The Hartford Police Department Code of Conduct addresses, in Article XII, discriminatory/disparaging actions by Hartford Police Department employees.

- A major concern was that in a predominantly minority community, responding police officers who sport tattoos that have been associated with white supremacist groups may result in an explosive situation, endangering both the officers and the community.

- Chief Marquis had inquired of and received a response from a contact at the Federal Bureau of Investigation Legal Instruction Unit addressing the legality of ordering that spider web tattoos be covered.

22. On April 14, 2003 Bruce P. Marquis revised Section III.C.5 of General Order 6-15 as follows: The Chief of Police has the authority to order personnel to cover tattoos that are deemed as offensive and/or presenting an unprofessional appearance. Personnel shall cover the tattoo with either a flesh tone, navy blue or white type material that matches the uniform shirt or wear a long sleeve shirt in accordance with the Winter Uniform of the Day Standard.   (Exhibit D).

23. On April 14, 2003 Bruce P. Marquis issued a memorandum to all sworn personnel to cover all visible spider web tattoos while in an on-duty capacity or wearing the Hartford Police Uniform. (Exhibit H).

24. Following the issuance of the April 14, 2003 memorandum, plaintiffs, all of whom sport visible spider web tattoos, have complied with the order to cover them while in an on-duty capacity or wearing the Hartford Police Uniform.

25. At all relevant times, there was a collective bargaining agreement in effect between the City of Hartford and the Hartford Police Union, of which plaintiffs were and are, members. A portion of this agreement is attached as Exhibit I.

26. Such collective bargaining agreement provides that discipline shall be meted out for just cause.

27. Plaintiffs have not been disciplined in any manner and have not lost any pay as a result of the issuance of the April 14, 2003 memorandum.

28. The April 14, 2003 memorandum was issued pursuant to official policy. In issuing the April 14, 2003 memorandum Bruce P. Marquis was acting as a final policy maker.

29. On or about June 5, 2003, Elizabeth Horton Sheff, the Council Majority Leader, was quoted in the newspaper as saying: It [tattoo] could be a picture of a dog chasing a cat and [if] it was offensive, it should be covered .

30. The defendants have no evidence that the plaintiffs sport their spider web tattoos as symbols of any racist or anti-Semitic philosophy or statement.

31. There are several other police officers in the Hartford Police Department, including one or more of the plaintiffs, who sport tattoos other than the spider web design. They have not been directed to cover these other tattoos. No concerns regarding those other were brought to the attention of the Hartford Police Department command staff.

32. The Hartford Police Department is subject to a consent decree in the case of Cintron v. Vaughan, which was brought in 1969 and settled in 1973. (Exhibit J).

|  |  |
|---|---|
| PLAINTIFFS, | DEFENDANTS, |
| BY_____ | BY_____ |
| JON L. SCHOENHORN, ESQ. | HELEN APOSTOLIDIS, ESQ. |
| Schoenhorn & Associates | Assistant Corporation Counsel |
| 97 Oak Street | 550 Main Street |
| Hartford, CT 06106 | Hartford, CT 06103 |
| Fed. Bar No. ct00119 | Fed. Bar No. ct05534 |
| Tel. No. (860) 278-3500 | Telephone (860) 543-8575 |
| Fax. No.(860) 278-3500 | Facsimile (860) 722-8114 |