UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH INTURRI, ET AL. | : | CIVIL ACTION NO. 3:03CV987 (CFD) |
| Plaintiffs | | |
| vs. | : | |
| CITY OF HARTFORD, CONNECTICUT; and BRUCE P. MARQUIS, | | |
| Defendants | : | JUNE 11, 2004 |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

In their cross-motion for summary judgment, the plaintiffs argued that General Order 6-15, Section III.C.5 is unconstitutional on both fourteenth amendment due process grounds of vagueness, and as a violation of fourteenth amendment equal protection.

At the outset, the plaintiffs note that they maintain no direct first amendment attack on the General Order at issue in this case. While the complaint references the fact that two of the plaintiffs (Besse and Castagna) obtained their tattoos as a form of protest and solidarity after criticism was first levied at the other three plaintiffs, ¶¶ 8 and 9, the plaintiffs have decided not to pursue that aspect of the complaint and, instead, challenge the administrative order directly on fourteenth amendment grounds. The first amendment is only implicated to the extent that the defendants have singled out the plaintiffs for disparate treatment because of the perceived, but erroneous, notion, that the web-design tattoo has a particular connotation or conveys a particular message.

Consequently, the plaintiffs submit that the defendants' analysis under the first amendment is irrelevant. Since the defendants have chosen not to address the plaintiffs' due process vagueness argument in their memorandum, the only remaining substantive challenge

relates to the plaintiffs equal protection claim.

##  II.    PLAINTIFFS SHOULD PREVAIL ON EQUAL PROTECTION GROUNDS

The fourteenth amendment s Equal Protection Clause states in relevant part that  [n]o State shall. . . deny to any person within its jurisdiction the equal protection of the laws.   The provision  prohibits discrimination on grounds of race, religion or other arbitrary classification. *Oyler v. Boyles*, 368 U.S. 448 (1962).  It also commands that no person shall be denied the equal protection of the law by any state or local government. *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 (1975).  It mandates that no governmental entity shall burden persons, or deny a benefit to them, because they are members of a protected class, or because they are disfavored for some other arbitrary reason.

In *Indiana State Teachers Association v. Board of School Commissioners of the City of Indianapolis*, 101 F.3d 1179 (7th Cir. 1996), Chief Judge Posner explained that a plaintiff need not belong to any specific  class  of individuals in order to prove a violation of equal protection, noting,  The equal protection clause does not speak of classes.  A class, moreover, can consist of a single member, or of one member at present; and it can be defined by reference to the discrimination itself.  *Id.* at 1181 (internal citations omitted).  Finally, Judge Posner noted that  [w]hile the principal target of the equal protection clause is discrimination against members of vulnerable groups, the clause protects class-of-one plaintiffs  victimized by  the wholly arbitrary act. *Id.*

Thus, deliberate selective enforcement of laws based upon  unjustifiable standards  also constitutes a violation. *Snowden v. Hughes*, 321 U.S. 1, 8-9 (1944). The  Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  Municipal officers

violate the Fourteenth Amendment when they "intentionally treat [a person] differently from others similarly situated." *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). Moreover, "equal protection does not just mean treating identically situated persons identically. If a bad person is treated better than a good person, this is just as much an example of unequal treatment as when a bad person is treated better than an equally bad person or a good person worse than an equally good person." *Esmail v. Macrane*, 53 F.3d 176, 179 (7th Cir. 1995). Allowing individual plaintiffs to recover in such circumstances recognizes the principle that "[the Equal Protection Clause] has long been understood to provide a kind of last-ditch protection against governmental action wholly impossible to relate to legitimate governmental objectives. *Pontarelli Limousine, Inc. v. City of Chicago,* 929 F.2d 339, 342 (7th Cir. 1991)." *Id.*

      The difficulty with the defendants' argument is that, unlike the case of *Riggs v. City of Forth Worth*, 229 F.Supp.2d 572 (N.D. Tex. 2002), which defense counsel erroneously suggests "presents an 'almost . . . identical issue' as the one presented here," Defendant's Memorandum, p. 10, the General Order 6-15 is not directed to the entire class of officers with visible tattoos. Instead, it is directed to a particular style or design of tattoo, that is "deemed as offensive." Therefore, unlike *Riggs* and other cases that challenge grooming and other personal appearance regulations across the board, the directive by Defendant Marquis is content-based, and subjects the plaintiffs to adverse job action based upon a perception—albeit a false one—that there is some sort of racist ideation associated with the design, or, that it is "offensive" to someone, in this case, one disgruntled African-American police officer.

      As a content-based rule, it implicates a fundamental right under the first amendment and, therefore, deserves review under a heightened level of scrutiny. However, because the plaintiffs do not allege that the order actually burdens their exercise of first amendment expression, they

seek review under the intermediate level of scrutiny that lies between [the] extremes of rational basis of review and strict scrutiny. *Clark v. Jeter*, 486 U.S. 456, 461 (1988). Although not implicating quasi-suspect classifications, *United States v. Coleman*, 166 F.3d 428, 431 (2d Cir. 1999) (per curiam), intermediate scrutiny is also applied in circumstances where government action affects an important, though not constitutional, right. *Id.* at 431.

The Supreme Court and the Second Circuit have presumed the existence of a liberty interest in one s personal appearance. *See, e.g. Kelley, Commissioner Suffolk County Police Department v. Johnson*, 425 U.S. 238, 244 (1976); *Zalewska v. County of Sullivan*, 316 F.3d 314, 321 (2d Cir. 2003); *East Hartford Education Association v. Board of Education of the Town of East Hartford*, 562 F.2d 838, 861 (2d Cir. 1977). At the same time, these same cases recognize the right of a public employer to place restrictions on personal appearance while in the workplace. The plaintiffs do not challenge this maxim. However, they do challenge the ability of the defendants to make arbitrary decisions about the meaning of their appearance and, therefore, discriminate on the basis of some vague notion that someone will be offended.

For example, the defendants could hardly justify banning crescent moon tattoos because of a misperception that it symbolized support for the Muslim religion, even if the plaintiffs had no such intention; nor could they ban cross pendants, because of a misperception that non-Christians might be offended. This type of discrimination directly implicates first amendment freedoms and causes constitutional harm, even if the plaintiffs were not otherwise engaging in first amendment activity. *Cf. Estate of Amos ex rel. Amos v. City of Page, Arizona*, 257 F.3d 1086, 1094 (9th Cir. 2001) (stating in context of a 42 U.S.C. § 1983 racial discrimination claim: That [plaintiff] was actually white does not make [discrimination based upon mistaken racial identity] or its resulting injury less direct. )

Moreover, unlike cases dealing with clothing or hairstyles, the plaintiffs tattoos are permanent and removing them would be a risky, painful and expensive proposition. *See, e.g. People v. Page*, 104 Cal. App. 3d 569, 163 Cal. Rptr. 839 (1980) (expert testimony established that tattoos were permanent and that an attempt to remove them would leave permanent scarring for life ); *Williams v. Fields*, 570 So. 2d 20 (Ct. App. La. 1990) (expert testimony established that there is a possibility of scar formation after tattoo removal); *Stephenson v. Davenport Community School District*, 110 F.3d 1303 (8th Cir. 1997) (evidence that laser treatment for the removal of a tattoo on a hand would cost $500, requires burning through four layers of skin followed by two months of treatment where the skin is scraped with a razor blade to prevent bleeding).

Therefore, the plaintiffs ask the Court to find that intermediate scrutiny is the appropriate standard in this case.

Even if the court limits its analysis to rational basis review, the defendants actions cannot stand. "In the context of an equal protection challenge to social and economic legislation that does not infringe upon a fundamental right or affect a suspect group, the classification drawn by the statute will not violate the equal protection clause if it is rationally related to a legitimate public interest. *Nordlinger v. Hahn,* 505 U.S. 1, 8 (1992).    *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439-41 (1985).  In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, see *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174, 179 (1980), *reh. denied*, 450 U.S. 960 (1981), the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker, see *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464 reh. denied, 450 U.S. 1027 (1981), and the relationship of the

classification to its goal is not so attenuated as to render the distinction arbitrary or irrational, *see Cleburne v. Cleburne Living Center, Inc., supra*, 473 U.S. at 446. "A statutory classification fails rational-basis review only when it rests on grounds wholly irrelevant to the achievement of the State's objective. *Holt Civic Club v. Tuscaloosa,* 439 U.S. 60, 71 (1978) . . .." (Citation omitted; internal quotation marks omitted.) *Heller v. Doe,* 509 U.S. 312, 324 (1993).

The defendants stated purpose fails rational basis review. First, the only person to complain about the tattoos was a detective who raised the issue in the context of a host of other grievances. Second, the materials relied upon by the defendants, notably the ADL website, makes clear that the web tattoo is not limited to racist or Aryan groups and expressly disavows any presumption about the meaning of such a design.

The plaintiffs assert a "class of one" equal protection claim based on the Supreme Court's decision in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). *See African Trade & Info. Ctr. v. Abromaitis*, 294 F.3d 355, 363-64 (2d Cir. 2002) (distinguishing between selective prosecution equal protection claim and *Olech*-based equal protection claim).

As plaintiffs noted in their original memorandum, "the Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (*citing City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985)). To succeed in an action alleging selective prosecution, plaintiffs in this Circuit have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Harlen Assocs., supra*, 273 F.3d at 499 (internal citation and quotation marks omitted).

The plaintiffs' *Olech*-based equal protection claim is sustainable by showing that they were treated differently from similarly situated officers, a point admitted by the defendants in the stipulated facts, and that there was "no rational basis for the difference in treatment." *Olech, supra,* 528 U.S. at 564. The uncontested evidence demonstrates that the defendants' subjective belief concerning public perception of the tattoos was unwarranted, and that such an unwarranted belief resulted in irrational negative treatment of the plaintiffs. *See, e.g. Cobb v. Pozzi,* 363 F.3d 89, 110 (2d Cir. 2003) (defendants retaliatory firing based on subjective belief about plaintiffs union activities supported judgment for violation of Equal Protection Clause).

In *Willowbrook v. Olech, supra,* 528 U.S. at 563, the respondent sought to have her property connected to the municipal water supply. The town conditioned the connection on the respondent's grant to the town of a thirty-three foot easement, although other property owners were required to grant only a fifteen foot easement. *Id.* After a three month delay, however, the town agreed to provide water service to the respondent with only a fifteen foot easement. *Id.* The respondent brought an action against the town, claiming that the town's demand of an additional eighteen foot easement violated her equal protection rights under the federal equal protection provision; was irrational and wholly arbitrary; was motivated by ill will that resulted from the respondent's prior filing of an unrelated, successful lawsuit against the town; and was made in reckless disregard of or with the intent to deprive her of her rights. *Id.* The federal District Court dismissed the action for failure to state a cognizable claim under the federal equal protection clause. *Id.* The United States Court of Appeals for the Seventh Circuit reversed the judgment of the District Court, holding that a plaintiff has a cognizable equal protection claim "by asserting that state action was motivated solely by a spiteful effort to get him for reasons wholly unrelated to any legitimate state objective." (Internal quotation marks omitted.) *Id.* at 563-64.

The United States Supreme Court affirmed the judgment of the Seventh Circuit, but based its conclusion on an alternative theory:

> [The respondent's] complaint can fairly be construed as alleging that the [town] intentionally demanded a 33 foot easement as a condition of connecting her property to the municipal water supply where the [town] required only a 15-foot easement from other similarly situated property owners. . .. The complaint also alleged that the [town's] demand was  irrational and wholly arbitrary  and that the [town] ultimately connected her property after receiving a clearly adequate 15-foot easement.  These allegations, quite apart from the [town's] subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis.

*Id*.  The Supreme Court reasoned that it has recognized successful equal protection claims brought by a class of one, where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.  See *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441 (1923);  *Allegheny Pittsburgh Coal Co. v. Commission of Webster [County],* 488 U.S. 336 (1989).  In so doing, the court has explained that the purpose of the equal protection clause of the Fourteenth Amendment is to  secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.   *Sioux City Bridge Co.* v. *Dakota County, supra*, at 445 (quoting *Sunday Lake Iron Co. v. Township of Wakefield,* 247 U.S. 350, 352 (1918).  (Internal quotation marks omitted.)

This issue of selective enforcement or treatment by public officials was also addressed by the Connecticut Supreme Court in *Thomas v. West Haven,* 249 Conn. 385,  400 (1999), which noted that "selective enforcement is a murky [area] of equal protection law in which there are surprisingly few cases...." (Citation omitted;  internal quotation marks omitted.)

The United States Supreme Court has previously invalidated regulations using a rational basis analysis.  For example, in *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472 (2003), the

8

Court invalidated a statute against homosexual sodomy on both due process and equal protection grounds. In a concurring opinion, Justice O Connor determined that the State of Texas was not advancing a legitimate state interest in criminalizing certain sexual acts only when performed by homosexuals:  Moral disapproval of this group, like a bare desire to harm this group, is insufficient to satisfy rational basis review under the Equal Protection Clause.  Id. at  , 123 S.Ct. at 2486.  *See also Romer v. Evans*, 517 U.S. 620 (1996) (Court struck down proposed Colorado constitutional amendment to prohibit counties from passing laws prohibiting discrimination based on sexual preferences, noting that purpose of classification is to make  homosexuals  unequal to everyone else. )

Plaintiffs here make a similar claim.  The unsubstantiated (and false) perception that someone might be offended by a particular tattoo because of its potential  association with racist . . . groups,  based upon an uneducated assumption of the  meaning  of the tattoo is as irrational as the position taken by Hartford s Deputy Mayor, who would require differential and negative treatment, if someone complained about an image of a cat chasing a dog.

While the plaintiffs maintain that the General Order is, itself, vague, it is its enforcement in these particular circumstances that violates the plaintiffs  rights under the Equal Protection Clause.  In this case, it was the  improper execution [of the Order] through duly constituted agents,  which results in a constitutional violation.

**III.     DEFENDANT MARQUIS IS NOT ENTITLED TO QUALIFIED IMMUNITY**

The plaintiffs do not quarrel with the standard for qualified immunity set out in the defendants  brief.  The defendants correctly cite the standard as enunciated by such cases as *Wilson v. Layne*, 526 U.S. 603, 609 (1999).   They also notably and appropriately limit this defense to Defendant Marquis in his individual capacity.

Qualified immunity is an affirmative defense for which Chief Marquis bears the burden of proof.  *Gomez v. Toledo,* 446 U.S. 635, 640, (1980).   To establish the [qualified immunity]

defense at the summary judgment stage, the [defendant] must show upon facts that are undisputed either that his conduct did not violate clearly established rights of which a reasonable person would have known, or that it was objectively reasonable to believe that his acts did not violate these clearly established rights. *Soares v. State of Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993), *quoting Finnegan v. Fountain*, 915 F.2d 817, 823 (2d Cir. 1990), *citing Harlow v. Fitzgerald*, 457 U.S. 800, 818-19, 73 L.Ed.2d 396, 102 S.Ct. 2727 (1982). *See also Posr v. Court Officer Shield 207*, 180 F.3d 409, 416 (2d Cir. 1999).

The plaintiffs submit that the Chief is not entitled to qualified immunity, because it was objectively unreasonable to believe that the Order was not unconstitutionally vague, or that his directive enforcing its terms only as to the plaintiffs was not arbitrary and unreasonably discriminatory. The plaintiffs rely on their arguments as set forth in the remaining portions of this memorandum, as well as their initial memorandum in support of summary judgment.

### IV.    DEFENDANT MARQUIS CAN BE SUED IN HIS OFFICIAL CAPACITY

The defendants argue, finally, that Chief Marquis cannot be sued in his official capacity. This is simply incorrect. While the plaintiffs recognize that a suit in an official capacity is tantamount to suing the municipality (as opposed to the defendants' erroneous reference to the State), the parties have stipulated to the fact that Defendant Marquis was the policy-maker with ultimate authority over the actions which led to the instant litigation, and is the specific person who issued both the General Order and the directive against the plaintiffs. Therefore, he can be sued in both his official and personal capacities.

### CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment should be denied, and the plaintiffs' cross-motion for summary judgment should be granted.

Dated at Hartford, CT this 11th day of June, 2004.

PLAINTIFFS

By_____
   Jon L. Schoenhorn
   Jon L. Schoenhorn & Associates
   97 Oak Street
   Hartford, CT 06106
   (860) 278-3500
   Fed bar #  ct00119
   civlrights@aol.com

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, first-class postage prepaid, on this 11th day of June, 2004, to the following:

Helen Apostolidis, Esq
City of Hartford Corporation Counsel
550 Main Street
Hartford, CT 06103

_____
Jon L. Schoenhorn

F:\SHARED\CLIENTS\Inturri\Pleadings\sj-reply-memo